## The State of Ohio *v.* Beane.

(No. M 77 CR B 7359-1-2—Decided September 30, 1977.)

Franklin County Municipal Court.

*Mr. Richard H. Ferrell,* for plaintiff.
*Mr. Thomas M. Tyack,* for defendant.

Macklin, J.   Case No. 7359-2 alleges that the defendant did, on or about March 25, 1977, having custody or control or supervision of 2741 Winchester Pike, occupy such premises for gambling in violation of R. C. 2915.02, to wit: conducting a game of chance, "Instant Bingo," for profit, in violation of R. C. 2915.03(A)(1).

R. C. 2915.03(A)(1) reads as follows:

"(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:

"(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;"

R. C. 2915.02 reads as follows:

"(A) No person shall:

"(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking;

"(2) Establish, promote, or operate, or knowingly engaged in conduct that facilitates any scheme or game of chance conducted for profit;

"(3) Knowingly procure, transmit, exchange, or engage in conduct that facilitates the procurement, transmission, or exchange of, information for use in establishing odds or determining winners in connection with bookmaking or with any scheme or game of chance conducted for profit;

"(4) Engage in betting or in playing any scheme or game of chance, except a charitable bingo game, as a substantial source of income or livelihood;

"(5) With purpose to violate division (A) (1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.

"(B) For purposes of division (A)(1) of this section, a person facilitates bookmaking if he in any way knowingly aids an illegal bookmaking operation, including without limitation placing a bet with a person engaged in or facilitating illegal bookmaking. For purposes of division (A)(2) of this section, a person facilitates a scheme or game of chance conducted for profit if he in any way knowingly aids in the conduct or operation of any such scheme or game, including without limitation playing any such scheme or game.

"(C) This section does not prohibit conduct in connection with gambling expressly permitted by law; does not apply to schemes of chance conducted by a charitable organization that is tax exempt under subsection 501(c)(3) of the Internal Revenue Code, provided that all of the money or assets received from such scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to, any organization that is described in subsection 509(a)(1), 509(a)(2), or 509(a)(3) of the Internal Revenue Code and is either a governmental unit or an organization that is tax exempt under subsection 501(c)(3) of the Inter-

nal Revenue Code; and does not apply to games of chance, except craps for money, roulette for money, and slot machines, that are conducted by charitable organizations that are tax exempt under subsection 501(c)(3) of the Internal Revenue Code, at the organizations' festivals, if the festivals are conducted for a period of four consecutive days or less and not more than twice a year.

"(D) Whoever violates this section is guilty of gambling, a misdemeanor of the first degree. If the offender has previously been convicted of any gambling offense, gambling is a felony of the fourth degree."

The defendant, Reverend Sandra L. Beane, is pastor of the Church of the Guiding Light which is a charitabe organization that is tax exempt under Section 501(c)(3) of the Internal Revenue Code, and, at the time in question she was conducting a licensed bingo game as well as selling "Instant Bingo" cards.

In Instant Bingo, the participant buys the card and removes five little paper slips, which act as concealing flaps, revealing five numbers or symbols or numbers and letters. On the reverse side of the card are printed the winning combinations and the participants need only compare the two to see if and how much they may have won. The device clearly bears no relation to the definition of "bingo" as contained in R. C. 2915.01(R).

The issue raised by the defendant is the classification of "Instant Bingo" as a "scheme of chance" or a "game of chance." If it is a scheme of chance it is exempted from the proscription of R. C. 2915.03(A)(1) by reason of R. C. 2915.02(C), *supra*.

"Scheme of Chance" is defined by R. C. 2915.01(C) as meaning "a lottery, numbers game, pool, or other scheme in which a participant gives a valuable consideration for a chance to win a prize."

"Game of Chance" is defined in R. C. 2915.01(D) as meaning "poker, craps, roulette, a slot machine, a punch board, or other game in which a player gives anything of value in the hope of gain the outcome of which is determined largely or wholly by "chance." Consequently, if

"Instant Bingo" falls into the category of "game of chance" and is not craps for money, roulette for money, or slot machines, the game is not prohibited but it may be conducted only at the organization's festivals provided that such festivals are conducted not more than twice a year and then for periods of not more than four consecutive days.

If there is any recurring feature that separates "scheme of chance" from "game of chance" in this court's analysis, it would seem to lie in an element of control, sometimes nebulous, on the part of the participant.

In a "scheme" the player has no apparent conscious control over his input. He buys his ticket or slip in the blind as to the potential result of that purchase. On the other hand, in a "game" such as craps for money, or roulette, the participant can make his bet selectively and base that selection upon a calculation of ascertainable odds. Even on a punch board operation, the player may choose the area on the board where his choice may be dictated by a hunch or guess.

If these be valid criteria, then it is clear that the Legislature did intend to discriminate between scheme and game with the possible effect of screening out the potential attraction of professional gambling to the charitable purposes contemplated in R. C. Chapter 2915.

Similarly, with the foregoing considerations in mind, it is clear, at least to this court, that the operation of "Instant Bingo" described herein does fit the category of a "scheme of chance," more specifically in the nature of a lottery.

There is one issue remaining in case No. 7359-2 and that is the question of whether all of the money or assets received from the operation of "Instant Bingo," after deduction only for prizes paid out, is given, donated or otherwise transferred to a tax exempt organization as described in R. C. 2915.02(C). And the only issue, from the beginning, in case No. 7359-1, was the allegation of compensation-wise transferred to the bingo operator, Nancy Morrison.

In the latter case there was some evidence, at oral hearing of the motion, to the effect that Nancy Morrison was

not paid for her work at the Church of the Guiding Light. But these are questions of fact directly related to the guilt or innocence of the defendant and, accordingly, matters to be proven by the prosecution.

Therefore, the motion to dismiss is denied.

*Motion denied.*